UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAY 2 5 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-322-GWU

JOHNIE BERRY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

Berry

reasonable mind might accept as adequate to support a conclusion. . ." <u>Wright v. Massanari</u>, 321 F.3d 611, 614 (6th Cir. 2003) (quoting <u>Kirk v. Secretary of Health and Human Services</u>, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

Berry

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

5

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

6

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Johnie Berry, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of "status post back surgery" and polysubstance abuse. (Tr. 19). Nevertheless, based in part on the testimony of a medical expert (ME) and a vocational expert (VE), the ALJ determined that Mr. Berry retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 23-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE a hypothetical question containing mental restrictions from a one-time examining psychological source, Dr. Blaine Pinaire. (Tr. 433-4). After examining the plaintiff in January, 2003, Dr. Pinaire completed a mental medical assessment form indicating that Mr. Berry

7

had a "poor" (defined as "limited but not totally precluded") ability to relate to co-workers, deal with the public, use judgment, deal with work stresses, and understand, remember, and carry out complex job instructions. (Tr. 345-6). The ALJ apparently accepted these restrictions for the purpose of his hypothetical question despite the psychologist's diagnosis of "rule out" polysubstance dependence. (Tr. 343).[1] He ultimately appeared to find only that the plaintiff would have a "limited but not totally precluded" ability to tolerate work stresses, and understand, remember, and carry out complex job instructions, but would have at least a "fair" (defined as "satisfactory") ability in all other areas of occupational, performance, and personal-social adjustment. (Tr. 24). No specific basis for this finding is discernible other than as the ALJ's opinion, since the ME stated that, as an orthopedist, he would not give an opinion regarding psychological problems, although he somewhat inconsistently further testified that "I think he's got a lot of psychological problems that do affect his abilities here" and that they "seem[...] to be the majority of the picture in this man [in] that his other symptoms are minimal." (Tr. 418).

Neither the ME or the ALJ discussed the psychological factors in the only opinion regarding functional capacity given by Mr. Berry's treating physician, Dr.

---

[1] The ALJ correctly noted that Public Law 104-121 prevents payment of disability claims based on substance abuse or addiction, and found "claimant's efforts to obtain narcotics to be the hidden agenda in this case." (Tr. 22-3).

8

James Templin. Dr. Templin submitted office notes showing that he treated the plaintiff beginning December, 2000 for chronic lower back pain and right leg numbness, weakness, and pain, following a L5-S1 diskectomy. (Tr. 195, 330). Dr. Templin noted that the plaintiff's body language and facial expression were consistent with someone in discomfort, found forward flexion limited to no more than 42 degrees, weakness in the toes on the right side, and sensation decreased in a dermatomal pattern in the right leg consistent with L5-S1. (Tr. 330-32). Dr. Templin prescribed Methadone for pain to be taken every eight hours as needed and Valium for muscle spasms, also to be taken every eight hours as needed. (Tr. 332). The records submitted show that he examined the patient every two months through at least October, 2002 and continued the same medications, making similar findings on examination. (Tr. 263-4, 316-32).

On April 26, 2002, Dr. Templin wrote a letter requesting that Mr. Berry be excused from jury duty. (Tr. 339). He described the patient's problem as back pain "due to multiple lumbar disc herniations" and a history of an L5-S1 laminectomy/diskectomy, and as suffering from "failed back syndrome." Due to pain, "he has difficulty with sleep, concentration, and easy fatigability," and added that both Methadone and Valium "had a somnolent side effect." (Id.). In addition to the need to move from sitting to standing position at will, Dr. Templin believed "he would possibly have a difficult time concentrating on the issues at hand." (Id.).

9

Berry

Therefore, it appears that the treating physician opined that Mr. Berry would have concentration difficulties both due to pain, and, separately, to the medication he was taking. While the ALJ accepted testimony from the ME that Mr. Berry was embellishing his symptoms (e.g., Tr. 418), the ME specifically based this opinion, to considerable extent, on his belief that examining sources did not find the decreased sensation in Mr. Berry's right leg to follow a dermatomal pattern, and that he was not cooperating with examiners. (Id.). However, on further questioning, it appeared that the ME erroneously believed that state agency reviewing physicians had actually examined the plaintiff. (Tr. 421-3). These physicians (Tr. 226-45) had found that the plaintiff was not cooperating and had a non-dermatomal sensory loss in the entire right leg based only upon the report of a one-time examining physician, Dr. Rita Ratliff, whose report is dated September 26, 2000 (Tr. 210-12), well before Dr. Templin's records were submitted. The ME had to admit that a subsequent examiner, Dr. David Muffly (Tr. 347-54), did not indicate that the plaintiff was not cooperating (Tr. 420). He did not identify any other examining sources who said the plaintiff was not cooperating, and Dr. Templin clearly never made any such indication.

In any case, Dr. Templin was the treating source and, as such, his opinion regarding concentration is entitled to great weight. It was not even discussed by the medical expert or the ALJ, however. Even assuming that the plaintiff was engaging

10

Berry

in polysubstance abuse, as found by the ALJ, there is no question that Dr. Templin was actually prescribing medications that would reasonably cause severe drowsiness and difficulty with concentration. While Dr. Pinaire found, on the basis of a one-time examination, that the plaintiff would have a satisfactory ability to maintain attention and concentration, he was not a medical doctor, and did not address the issue of medication side effects. Accordingly, the hypothetical factors chosen by the ALJ are not supported by substantial evidence.

The decision will be remanded for further consideration.

This the ___25___ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11